### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROMAN CATHOLIC ARCHBISHOP OF WASHINGTON, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN SEBELIUS, Secretary, U.S. Department of Health and Human Services, *et al.*,<br><br>Defendants. | Civil Action No. 12-0815 (ABJ) |

## <u>MEMORANDUM OPINION</u>

This is one in a long line of cases challenging regulations issued by the Department of Health and Human Services ("HHS"; "Department") pursuant to provisions of the Patient Protection and Affordable Care Act ("Act"), 42 U.S.C. § 300gg-13(a)(4) (2010).[1]   The regulations in question implement the requirement under the Act that group health plans and health insurance issuers offering group or individual health insurance provide coverage for "preventative care" for women.  Defendants moved to dismiss the case for lack of jurisdiction on

---

[1]   Other cases involving similar challenges include: *Colorado Christian University v. Sebelius*, Civil Action No. 11-cv-03350-CMA-BNB, 2013 WL 93188 (D. Colo. Jan. 7, 2013); *Catholic Diocese of Peoria v. Sebelius*, No. 12-1276, 2013 WL 74240 (C.D. Ill. Jan. 4, 2013); *University of Notre Dame v. Sebelius*, Cause No. 312CV253RLM, 2012 WL 6756332 (N.D. Ind. Dec. 31, 2012); *Catholic Diocese of Biloxi, Inc. v. Sebelius*, 1:12CV158-HSO-RHW, 2012 WL 6831407 (S.D. Miss. Dec. 20, 2012); *Zubik v. Sebelius*, No. 2:12-cv-00676, 2012 WL 5932977 (W.D. Pa. Nov. 27, 2012); *Catholic Diocese of Nashville v. Sebelius*, No. 3-12-0934, 2012 WL 5879796 (M.D. Tenn. Nov. 21, 2012); *Roman Archdiocese of New York v. Sebelius*, No. 12 Civ. 2542(BMC), -- F. Supp. 2d --, 2012 WL 6042864 (E.D.N.Y. Dec. 4, 2012); *Legatus v. Sebelius*, No. 12-12061, -- F. Supp. 2d --, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012); *Nebraska ex rel. Bruning v. United States Department of Health & Human Services*, 877 F. Supp. 2d 777 (D. Neb. 2012).

August 6, 2012, arguing that plaintiffs lack standing and that the case is not ripe for decision. Defs.' Mot. to Dismiss [Dkt. # 19].  On November 2, 2012, this Court stayed the case pending an anticipated ruling by the D.C. Circuit in the consolidated appeal of two cases substantially similar to this one that had been dismissed by other courts in this district on standing and ripeness grounds.  Minute Entry (Nov. 2, 2012), citing *Wheaton Coll. v. Sebelius*, Civ. Action No. 12-1169 (EHS), -- F. Supp. 2d --, 2012 WL 3637162 (D.D.C. Aug. 24, 2012); *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25 (D.D.C. 2012).  The D.C. Circuit has now ruled. *Wheaton Coll. v. Sebelius* ("*Wheaton* Order"), Nos. 12-5273, 12-5291, -- F.3d --, 2012 WL 6652505 (D.C. Cir. Dec. 18. 2012).  In a three-page *per curiam* Order, the court found that the plaintiffs had proper standing to bring their claims, but that the controversy was not ripe for decision.  *Id.*  The court ordered the cases to be held in abeyance subject to regular status reports. *Id.* at *2.  Plaintiffs and defendants in this case have each filed a five-page brief addressing the applicability of the circuit court's decision to this case.  Upon consideration of the two briefs, as well as the motion to dismiss and the pleadings responsive to it, the Court will grant defendants' motion to dismiss because plaintiffs' claims are not ripe.

## BACKGROUND

Plaintiffs are five Catholic non-profit organizations.  Compl. [Dkt. # 1] ¶ 2.  According to the complaint filed in this case, plaintiffs each provide services to residents of the greater Washington, D.C. community, without regard to the residents' religious affiliations.  *Id.* Plaintiffs oppose the use of abortion, sterilization, and contraceptives on religious grounds.  *Id.* ¶ 4.  Accordingly, although all of the plaintiffs offer health insurance plans to their employees, none of the plans cover those types of preventative services for women.  *Id.* ¶¶ 44–46, 56, 64, 74, 86, 90.

As explained in the D.C. Circuit's Order in *Wheaton College*, the government defendants issued a set of interim final rules on July 2010 under the Affordable Care Act, 42 U.S.C. § 300gg-13(a)(4), which required group health plans and health insurance issuers to cover "preventative care and screening[s]" for women in accordance with guidelines that were to be issued by HHS at a later date, unless the issuers were grandfathered or otherwise exempt.   75 Fed. Reg. 41,726, 41,726 (July 19, 2010); *see* Compl. ¶¶ 106–107; *see also Wheaton* Order, at *1.   On August 1, 2011, HHS issued guidelines requiring coverage of all "FDA approved contraceptive[s]."   HRSA, Women's Preventative Services: Required Health Plan Coverage Guidelines, *available at* http://www.hrsa.gov/womensguidelines/ (last visited Jan. 24, 2013).   A later Amended Interim Final Rule issued by HHS authorized an exemption for certain religious organizations with religious objections to contraception.   76 Fed. Reg. 46,621, 46,623 (Aug. 3, 2011).   In February 2012, the government adopted in final regulations the definition of religious employer contained in the amended interim final rules, but it also created a temporary enforcement safe harbor for plans sponsored by certain non-profit organizations with religious objections to contraceptive coverage that do not qualify for the religious employer exemption.   77 Fed. Reg. 8725, 8727 (Feb. 15, 2012).   The safe harbor will be in effect until the first plan year that begins on or after August 1, 2013.   HHS, Guidance on the Temporary Enforcement Safe Harbor, at 3 (Feb. 10, 2012), *available at* http://cciio.cms.gov/resources/files/Files2/02102012/20120210-Preventive-Services-Bulletin.pdf. The supplemental information published in the Federal Register accompanying the final regulations stated that during the effective period of the safe harbor, HHS planned to develop and propose changes to the final regulations "that would meet two goals – providing contraceptive coverage without cost-sharing to individuals who want it and accommodating non-exempted

non-profit organizations' religious objections to covering contraceptive services[.]"  *Id.*  There is no dispute that all of the plaintiffs in this case are covered by the safe harbor, if not by the religious employer exemption.  *See* Compl. ¶ 130.  Since the plan years for all plaintiffs begin on January 1, Compl. ¶¶ 48, 87, they will be protected by the safe harbor until January 1, 2014.

Plaintiffs filed a nine-count complaint in this Court on May 21, 2012, challenging the requirement that they provide coverage for abortion, sterilization, and contraceptive services.[2] Defendants moved to dismiss the case on ripeness and standing grounds.

## STANDARD OF REVIEW

The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibly Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with examination of our jurisdiction.").  Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

---

2     One of plaintiffs' claims challenges the governmental investigation that is involved in determining whether entities are "religious employers," citing some uncertainty over whether plaintiff Archdiocese of Washington falls under the exemption.  Compl. ¶¶ 6, 213–222.  This uncertainty does not change the Court's analysis, since no party will be required to make this determination until after the expiration of the safe harbor.

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1993); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

### I.     Ripeness

Prudential ripeness is a two prong inquiry:  first, courts consider "the 'fitness of the issues for judicial decision,'" and second, they consider "the extent to which withholding a decision will cause 'hardship to the parties.'" *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012), quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

In *Wheaton College*, the D.C. Circuit found that the cases were not fit for decision because of the likelihood that the government would change the contraceptive coverage

requirement as it applied to the plaintiffs before it would ever enforce the requirement against them.  It found that the government's safe harbor provision constituted a commitment by the government not to enforce the contraception coverage requirement until the first plan year that begins on or after August 1, 2013.  *Wheaton* Order at *1–2.[3]  As to its determination that the contraception coverage requirement as enacted would never be enforced against the plaintiffs, the court cited representations made by the government at oral argument that "it would *never* enforce 45 C.F.R. § 147.130(a)(1)(iv) in its current form against the appellants or those similarly situated as regards contraceptive services" and that "there will . . . be a different rule for entities like the appellees," which the court construed as a "binding commitment."  *Id.*  It also pointed to language from an Advance Notice of Proposed Rulemaking ("ANPRM"), which discusses alternatives to the contraception coverage requirement for certain self-certifying organizations, that the government "intend[s] to propose."  *Id.*

This Court finds no reason why the Circuit Court's decision should not apply equally to the facts of this case.  Plaintiffs do not dispute that they are just the type of "similarly situated" entities to which the government referred in their representations to the circuit court.  Moreover, the government's supplemental brief in this case clarifies that "the regulations will never be enforced in their present form against entities like the plaintiffs in those cases or plaintiffs here and that defendants will finalize amendments to the regulations in an effort to accommodate religious organizations with religious objections to contraceptive coverage before the rolling expiration of the safe harbor begins in August 2013."  Defs.' Supp. Br. Addressing the D.C. Circuit's Order in *Wheaton College v. Sebelius* ("Defs.' Supp. Br.") [Dkt. # 38] at 4.  Just as the

---

3      As here, the plan years of the plaintiffs in those cases begin January 2014.  *Wheaton* Order at 2.

Circuit Court did in *Wheaton College*, this Court "take[s] the government at its word and will hold it to it." *Wheaton* Order, at *2, citing *EPA v. Brown*, 431 U.S. 99 (1977).

Plaintiffs instead rely on the second prong of the prudential ripeness inquiry: the hardship to the parties. They argue that they have established hardship that exceeds what was demonstrated in *Wheaton College* and *Belmont Abbey College* and that the hardship independently justifies the conclusion that this case is ripe for review. This argument is unconvincing. Plaintiffs have, at most, demonstrated that they will suffer some hardship during the period of regulatory uncertainty before the final regulations are issued because they must begin planning for the possibility that they will be forced to change their health insurance plans in advance of the date that the insurance plans take effect. Pls.' Mem. Regarding the D.C. Circuit's Decision in *Wheaton College* ("Pls.' Supp. Br.") [Dkt. # 37] at 2–5. The plaintiffs in both *Wheaton College* and *Belmont Abbey College* made similar arguments. *See Wheaton Coll.*, 2012 WL 3637162, at *8; *Belmont Abbey Coll.*, 878 F. Supp. 2d at 37–38. Although the D.C. Circuit did not expressly address those arguments in its Order, it is clear that they were unavailing to the court. *See Wheaton* Order at *1–2; *see also Am. Petroleum Inst.*, 683 F.3d at 389, quoting *Pub. Citizen Health Research Grp.*, 740 F.2d at 21, 31 (D.C. Cir. 1984) ("Considerations of hardship that might result from delaying review 'will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions.'").

The final question before the Court is whether the ripeness defect requires dismissal of the case or whether the Court should hold the case in abeyance pending the issuance of the new regulations that the government has promised. Although the Circuit Court decided to hold the *Wheaton College* and *Belmont Abbey College* appeals in abeyance, nothing in the Order suggests that this Court is required to do the same. *See Colo. Christian Univ.*, 2013 WL 93188, at *8

("Although the D.C. Circuit held the cases before it in abeyance, as opposed to dismissing them, it offered no compelling reason for doing so, nor is any such reason apparent to the Court."). Courts in this circuit regularly dismiss cases for the absence of a ripe case or controversy. *See, e.g.*, *In re Aiken Cnty.*, 645 F.3d 428, 434–36, 438 (D.C. Cir. 2011) (dismissing claims that were not ripe for judicial review); *Maalouf v. Wiemann*, No. 1:08-cv-02177-RJL, 2010 WL 4156654, at *1 (D.C. Cir. May 17, 2010) (affirming district court's dismissal of the case because it was not ripe for judicial review); *AstraZeneca Pharm. LP v. FDA*, 850 F. Supp. 2d 230, 250 (D.D.C. 2012) (dismissing case "without prejudice to [the plaintiff's] right to commence a new and different action if and when its claim ever ripens into a justiciable case or controversy").  If after the new regulations are issued, plaintiffs are still not satisfied, any challenges that they choose to bring will be substantially different from the challenges in the current complaint.  And in the unlikely event that the government does not keep its word, plaintiffs can bring a new challenge to the regulations along with a motion for emergency relief, if necessary.[4]  Accordingly, the Court will decline to hold this case in abeyance and will instead dismiss the case.  This would not bar plaintiffs from filing a new and different action in the future.  *See Colo. Christian Univ.*, 2013 WL 93188, at *8, citing 15 James WM. Moore et al., *Moore's Federal Practice* § 108.81 (3d ed. 2011) (dismissing a similar challenge to the contraception coverage requirement, in adherence with "the customary practice of dismissing an unripe case in its entirety").

## II.     Standing

In its *Wheaton* Order, the D.C. Circuit reiterated that standing is assessed at the time of filing, and it held that the plaintiffs "clearly had standing when these suits were filed." *Wheaton* Order at *1.  The government insists that this case can be distinguished from *Wheaton College*

---

[4]     The Court notes that it has construed the government's representations as a binding commitment and it would not look favorably upon the government's failure to comply.

and *Belmont Abbey College* because the plaintiffs here were undisputedly covered by the safe harbor provision at the time the complaint was filed.  Defs.' Supp. Br. at 3–4.  While this argument has some force, it appears that the Circuit Court's holding in *Wheaton College* was predicated simply on the fact that the contraceptive coverage requirement existed at the time the cases were filed, without regard to the defendants' intent to enforce it.  *Wheaton* Order at *1.  In fact, the Order does not even mention the safe harbor from enforcement until after the discussion of standing, when it reaches the ripeness analysis.  *Id.*  But since this Court has already found that the case is not ripe for decision, and it will dismiss the case on that jurisdictional ground, it need not decide whether plaintiffs have proper standing.  *See Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007), citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Where both standing and subject matter jurisdiction are at issue, however, a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other.")

## CONCLUSION

For the above-stated reasons, the Court will dismiss this action.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 25, 2013